UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| WILLIAM WENNER, | : | |
| | : | Civil Action |
| Plaintiff, | : | No. 04-cv-3414 (NLH) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| CORRECTIONAL MEDICAL | : | |
| SERVICES, INC., et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

ROSEMARY PINTO
FELDMAN & PINTO
1804 LOCUST Street, 2R
Philadelphia, PA 19103
*Attorney for Plaintiff William Wenner*

JEFFREY M. SCOTT
ARCHER & GREINER, PC
ONE CENTENNIAL SQUARE
PO BOX 3000
HADDONFIELD, NJ 08033-0968
*Attorney for Defendants CMS, William Andrade, James J. Neal,
M.D., James Ruman, R.N., Rock Welch, Abu Ahsan, M.D., Grace
Nugent, M.D., and Michele Miller, ANP*

**HILLMAN, District Judge**

Plaintiff, William Wenner, brings this wrongful death and
survival action on behalf of the estate of decedent, David Wenner
("Wenner"), alleging that Defendants were negligent and
deliberately indifferent to Wenner's serious medical needs by
failing to diagnosis and treat his hepatitis C ("HCV") while he
was incarcerated.  Before the Court is a Motion for Summary
Judgment filed by Defendants Correctional Medical Services, Inc.,

William Andrade, James J. Neal, M.D., James Ruman, R.N., Rock
Welch, Abu Ashan, M.D., Grace Nugent, M.D., and Michele F.
Miller, A.N.P. (collectively, "Defendants"). For the reasons
expressed below, Defendants' Motion will be granted.

I.  **JURISDICTION**

Plaintiff has brought his claims pursuant to 42 U.S.C. §
1983, as well as New Jersey state law.  This Court has
jurisdiction over Plaintiff's federal claims under 28 U.S.C. §
1331, and supplemental jurisdiction over Plaintiff's state law
claims under 28 U.S.C. § 1367.

II.  **BACKGROUND AND PROCEDURAL HISTORY**

On June 8, 1983, Wenner began serving a life sentence for
first degree murder.  On April 27, 1996, Defendant Correctional
Medical Services, Inc. ("CMS") entered into a contract with the
State of New Jersey to provide medical services to those
incarcerated in New Jersey State Department of Corrections
("NJDOC") facilities.  Under the terms of the 1996 contract, CMS
was responsible for covering the costs of HCV treatment.  In
October 2002, NJDOC agreed to cover the costs of HCV treatment.

In 1997, 1998, and 2000, Wenner was given routine medical
and psychological examinations, which revealed no medical
problems.  During these examinations, Wenner reported no medical
complaints.  Lab work conducted on October 26, 1997 and July 31,
1998 did reveal that Wenner had a slightly decreased platelet

2

count.  However, all tests of liver function were within normal
ranges.  On March 28, 2003, Wenner was tested for HIV.  The
results of this test were negative, and Wenner was subsequently
counseled regarding this result on April 4, 2003.

On June 11, 2003, Dr. Nugent ordered an urgent
gastroenterology consult after Wenner complained of abdominal
pain, tarry stools, and "spitting up blood."  Two days later, lab
results revealed an abnormally low platelet count, as well as
elevated bilirubin, low albumin, and high AST and ALT levels.
These lab results indicated cirrhosis of the liver.  On June 20,
2003, Dr. Nugent ordered that Wenner be administered lab tests
for hepatitis B ("HBV") and HCV.  On June 25, 2003, the lab tests
returned positive for both HBV and HCV.  Dr. Nugent reviewed
these findings with Wenner on June 30, 2003.  Wenner received
additional counseling and education regarding HCV on July 9,
2003.

On July 10, 2003, Wenner was admitted into the infirmary
after complaining of nausea, vomiting and edema.  The next day,
an ultrasound of Wenner's liver was completed, which indicated
splenomegaly with evidence of ascites.  On August 1, 2003, Wenner
was evaluated by a gastroenterologist who noted chronic HCV with
decompensated liver disease consistent with cirrhosis and portal
hypertension.  Based upon his findings, the gastroenterologist
concluded that Wenner was not a candidate for any HCV treatment,

3

but recommended that Wenner's sodium intake be monitored and that he continue with diuretics as prescribed.  Weekly lab tests were done on Wenner from August through October 2003.

On October, 22, 2003, Defendant Michele F. Miller, ANP reviewed Wenner's treatment options with him.  At that time, Ms. Miller discussed with Wenner the possibility of consulting Cooper Infectious Disease Clinic since Wenner desired treatment for his HCV even though it was not recommended by his gastroenterologist. Thereafter, Dr. Pola DeLaTorre of Cooper Infectious Disease Clinic also concluded that Wenner was not eligible for treatment because of his decompensated liver disease consistent with cirrhosis and portal hypertension.  On November 26, 2003 and again on January 14, 2004, Dr. DeLaTorre counseled Wenner about his illness and the fact that he was not eligible for treatment. On February 4, 2004, Wenner was again seen by a consulting gastroenterologist, who recommended increasing aldactone, adding lasix and limiting sodium in his diet.  Throughout 2004 and 2005 regular lab work continued to be conducted on Wenner.

On September 29, 2004, a gastroenterologist diagnosed Wenner with stage 5 liver disease.  On October 13, 2005, Wenner complained of nausea, vomiting, and diarrhea.  Subsequently, on November 6, 2005, Wenner was admitted to the Emergency Care Unit after he began experiencing pain in his rectum, became jaundiced, and began vomitting blood.  After suffering from uncontrolled

rectal bleeding on November 8, 2005, Wenner was transferred to the hospital for further care.  On November 10, 2005, Wenner died at the Saint Joseph's Regional Medical Center of what was likely hepatic failure.

On July 20, 2004, Wenner filed his original complaint with this Court.  Following Wenner's death, his brother and *administrator ad prosequendum* of his estate, Plaintiff, filed an amended complaint on November 2, 2007, alleging claims of deliberate indifference to Wenner's serious medical needs in violation of the Eighth Amendment, negligence, and medical malpractice.  In the Amended Complaint, Plaintiff seeks damages under both the New Jersey Wrongful Death Act, N.J.S.A. 2A:31-1, and the New Jersey Survivors Act, N.J.S.A. 2A:15-3.

## III. **DISCUSSION**

The five count Amended Complaint in this action alleges claims for violation of Section 1983 against all Defendants, negligence against Defendants CMS, Andrade, Neal, Ruman, Welch, and Ahsan (collectively, "CMS Defendants"), and medical malpractice against Defendants Nugent and Miller (collectively, "Treating Defendants"), as well as claims for violation of the Wrongful Death Act and Survivors Act.  Defendants now move for summary judgment on all five counts.

A.    **Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise,

6

specific facts showing that there is a genuine issue for trial.
Id.  Thus, to withstand a properly supported motion for summary
judgment, the nonmoving party must identify specific facts and
affirmative evidence that contradict those offered by the moving
party.  Anderson, 477 U.S. at 256-57.  A party opposing summary
judgment must do more than just rest upon mere allegations,
general denials, or vague statements.  Saldana v. Kmart Corp.,
260 F.3d 228, 232 (3d Cir. 2001).

**B.   Section 1983 Claim**

In Count I of the Amended Complaint, Plaintiff alleges that
Defendants violated Section 1983 by showing deliberate
indifference to Wenner's health and welfare in violation of the
Eighth Amendment.  To state a claim under 42 U.S.C. § 1983, a
plaintiff must show that: (1) the conduct complained of was
committed by a person acting under color of state law; and (2)
that the conduct deprived him of his rights, privileges, or
immunities secured by the Constitution or laws of the United
States.  See, e.g., Shuman ex rel. Shertzer v. Penn Manor School
Dist., 422 F.3d 141, 146 (3d Cir. 2005); Mark v. Borough of
Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995); Moore v. Tartler, 986
F.2d 682, 685 (3d Cir. 1993).  There is no dispute that CMS was
under contract with the State to provide medical care to inmates
at all times relevant to this case and that Defendants were
acting under color of state law.  Accordingly, the only question

7

is whether Wenner was denied a constitutional or other legal right.

The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners." Estelle v. Gamble, 429 U.S. 97, 104-105 (1976). To state a claim for violation of this Eighth Amendment right, a prisoner must show that: (1) their medical needs are serious; and (2) the defendants showed deliberate indifference to those needs. Id. There is no dispute that Wenner's HCV presented a serious medical need. Defendants argue, however, that the Treating Defendants were not deliberately indifferent to Wenner's serious medical needs in violation of the Eight Amendment. Accordingly, Defendants argue, the CMS Defendants cannot be vicariously liable for the Treating Defendants' conduct because there is no underlying constitutional violation upon which liability could be based. Moreover, even if there were, Defendants argue that vicarious liability does not exist under Section 1983. The Court will first address the issue of whether the Treating Defendants were deliberately indifferent.

"Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). A prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F. Supp. 2d 217, 228

8

(D.N.J. 2000).  Similarly, "mere disagreements over medical
judgment do not state Eighth Amendment claims." White v.
Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).  Even if a doctor's
judgment concerning the proper course of a prisoner's treatment
ultimately is shown to be mistaken, at most what would be proved
is medical malpractice and not an Eighth Amendment violation.
Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

    The Third Circuit has found deliberate indifference where a
prison official: (1) knows of a prisoner's need for medical
treatment but intentionally refuses to provide it; (2) delays
necessary medical treatment for non-medical reasons; or (3)
prevents a prisoner from receiving needed or recommended
treatment.  See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir.
1999); Monmouth County Correctional Institutional Inmates v.
Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987).  The Third Circuit has
also held that needless suffering resulting from the denial of
simple medical care, which does not serve any penological
purpose, violates the Eighth Amendment.  Atkinson v. Taylor, 316
F.3d 257, 266 (3d Cir. 2003); see also Durmer v. O'Carroll, 991
F.2d 64 (3d Cir. 1993); White, 897 F.2d at 110; Lanzaro, 834 F.2d
at 346 ("[D]eliberate indifference is demonstrated '[w]hen ...
prison authorities prevent an inmate from receiving recommended
treatment for serious medical needs or deny access to a physician
capable of evaluating the need for such treatment.'").

In this case, Plaintiff alleges that the Treating Defendants were deliberately indifferent in failing to diagnose or treat Wenner for HCV despite evidence of the disease in order to save money.  In support of this argument, Plaintiff asserts that the Treating Defendants "plainly ignored the signs and symptoms" that Wenner had HCV, and that Defendants delayed testing or treating Wenner until October 2003 because by then the cost of such treatment was "passed through" to NJDOC.  This delay in diagnosis, Plaintiff asserts, prevented Wenner from treating his HCV earlier, when treatment had a higher likelihood of success.

In opposition, Defendants argue that there is no constitutional duty to screen inmates for HCV.  The Court agrees. In a recently decided case, this Court held that since there was no evidence presented to the Court that HCV is a potentially dangerous and easily communicable disease like Tuberculosis, there is no general constitutional duty to screen asymptomatic inmates for HCV.  See Thomas v. Correctional Medical Services, Inc., No. 04-3358(NLH), slip op. at 18-21 (D.N.J. Mar. 17, 2009). Likewise, Plaintiff has not presented any evidence in this case to suggest that HCV is the type of easily communicable disease, like Tuberculosis, that requires universal screening. Accordingly, the Treating Defendants can only be found deliberately indifferent to Wenner's condition if they had some knowledge of it, but refused or delayed medical treatment for

10

non-medical reasons.

On this issue, Defendants argue that Plaintiff has not presented any medical evidence that demonstrates that Wenner had any serious medical need between 1996, when CMS was contracted to provide medical services, and 2003, when Wenner was diagnosed with HCV, that the Treating Defendants knew or should have known of. In the absence of such evidence, Defendants argue, there is nothing with respect to which the Treating Defendants could have been deliberately indifferent. Again, the Court agrees. As set forth above, annual physical examinations of Wenner in 1997, 1998, and 2000 revealed no medical problems, and Wenner did not make any complaints during these examinations. Further, although lab results from October 1997 and July 1998 did show slightly reduced platelet counts, the lab tests indicated that Wenner's liver functions were normal. In the face of these facts, Plaintiff has failed to come forward with any evidence suggesting that the Treating Defendants were aware or should have been aware of a serious medical need by Wenner at any time prior to his diagnosis with HCV in 2003.[1] Therefore, the Court finds that there are no genuine issues of material fact with respect to

---

[1] The report submitted by Plaintiff's expert, Bennet Cecil, M.D., noted that Wenner had abused heroin since the age of 15 and had a low platelet count in a 1994 lab result. However, there is no evidence that the Treating Defendants were of aware of Wenner's prior drug use until after his diagnosis. Further, Dr. Cecil's report did not suggest that a low platelet count is a symptom of HCV.

whether the Treating Defendants were deliberately indifferent to a serious medical need of Wenner between 1996 and his 2003 diagnosis with HCV.

Following his diagnosis with HCV in 2003, Defendants argue, Wenner received proactive medical care until his death in 2005. Once Wenner was diagnosed with HCV, he was counseled and educated with respect to the illness and treatment thereof, including potential side effects. On August 1, 2003, Wenner was evaluated by a gastroenterologist who determined that he was not eligible for HCV therapy because of his decompensated cirrhosis. When he was not satisfied with this conclusion, Wenner was given the opportunity to also be evaluated by Dr. DeLaTorre of Cooper Infectious Disease Clinic on October 27, 2003. Dr. DeLaTorre came to the same conclusion that, due to his decompensated cirrhosis, Wenner was not eligible for HCV therapy. Thus, the decision to forgo giving Wenner HCV therapy was based on "sound professional judgment." Indeed, Defendants' expert, Dr. Carroll Leevy, M.D., called the treatment Wenner received "state of the art." Although Plaintiff's expert, Dr. Cecil, argues that Wenner should have been provided with drug therapy treatment after being diagnosed with HCV, at most this amounts to nothing more than the type of "mere disagreements over medical judgment" that have been held insufficient to rise to the level of deliberate indifference. See White, 897 F.2d at 110 (3d Cir. 1990).

12

Thus, having determined that the Treating Defendants had no duty to screen Wenner for HCV and that Plaintiff failed to present any evidence sufficient to show that the Treating Defendants were deliberately indifferent to a serious medical need of Wenner's either before or after his diagnosis with HCV in 2003, the Court finds that no genuine issue of material fact exists with respect to Count I against the Treating Defendants. With the Section 1983 claim against the Treating Defendants now dismissed, there is no underlying constitutional violation capable of supporting a claim for vicarious liability against the CMS Defendants.[2]  See Grazier ex rel. White v. City of Philadelphia, 328 F.3d 120, 124 (3d Cir. 2003) (holding that entity cannot be liable for actions of one of its officers, where a jury concluded the officer did not violate any constitutional right).  Accordingly, the Court also finds that no genuine issue of material fact exists with respect to Count I against the CMS Defendants.[3]  Defendants' Motion for Summary Judgment is therefore granted with respect to Count I, which is dismissed in

---

[2] Having reached this conclusion, the Court need not address the issue of whether vicarious liability is available in this case under Section 1983.

[3] Plaintiff argues that the "supervisory defendants" should be held liable for their own actions in maintaining a policy of denying treatment for HCV.  However, this argument is of no avail in light of the Court's determination that Wenner was not denied any treatment for his HCV to which he was entitled, irrespective of whatever policies may or may not have been in place.

its entirety.

### C.  Medical Malpractice Claim

Plaintiff brought medical negligence or medical malpractice claims against the Treating Defendants in Count III of the Amended Complaint.  Defendants argue that Plaintiff's medical malpractice claim must fail because there is no evidence that the Treating Defendants deviated from the standard of care in treating Wenner.

Under New Jersey law, "[a] Plaintiff claiming medical malpractice 'must prove the applicable standard of care, that a deviation has occurred, and that the deviation proximately caused the injury.'"  Gordon v. Matez, 2006 WL 3299180, at *3 (N.J. Super. App. Div. Nov. 15, 2006) (citing Verdicchio v. Ricca, 843 A.2d 1042, 1055 (N.J. 1985)).  "An action for medical malpractice 'is a kind of tort action in which the traditional negligence elements are refined to reflect the professional setting of a physician-patient relationship.'"  Id.

In order to succeed in a medical malpractice claim, the plaintiff must establish the standard of care through expert testimony.  Rosenberg v. Cahill, 492 A.2d 371, 374 (N.J. 1985).  An expert witness cannot establish a standard of care merely by expressing his personal opinions.  Fernandez v. Baruch, 244 A.2d 109, 112 (N.J. 1968).  "The expert testimony must relate to generally accepted medical standards, not merely to standards

14

personal to the witness." <u>Id.</u> "Whether the doctor has committed an act of malpractice depends not on the outcome, but on whether the doctor adhered to the applicable standard of care." <u>Morlino v. Medical Center of Ocean County</u>, 706 A.2d 721, 732 (N.J. 1998). "The physician's exercise of judgment is to be evaluated not on the basis of the physician's good faith or honesty, but solely on whether it falls below an objective standard of care." <u>Id.</u> at 733.

Here, Plaintiff has failed to provide any evidence establishing the standard of care.  The report issued by Plaintiff's expert, Dr. Cecil, opines at length about what treatment Wenner should have received.  However, Dr. Cecil's report speaks only in terms of what treatment he would have provided, and not in terms of what the standard of care was and how the treatment provided deviated from that standard.  Nowhere in his report does Dr. Cecil address what the prevailing HCV treatment was at the time.  Nor does his report contain any discussion of how the level of care provided by Treating Defendant's fell below that applicable standard of care.  Dr. Cecil's report sets forth only the type of personal opinions that have been held to be insufficient to support a claim of medical malpractice as a matter of law.  <u>See</u> <u>Fernandez</u>, 244 A.2d at 112.

Conversely, the report of Defendants' expert, Dr. Levy, sets forth that testing and treating HCV was not commonplace during

15

the 1990's.  Dr. Levy's report also sets forth that drug therapy
was not the common practice in the community at the time of
Wenner's diagnosis.  Indeed, Dr. Levy wrote that "[e]ven today,
most clinicians in practice would not treat a patient with
significant end stage disease, including ascites, for fear of
decompensating the patient and causing a premature death."  In
sum, Dr. Levy concluded that "Mr. Wenner received state of the
art care while incarcerated."

       Even when given the benefit of all justifiable inferences
that can be drawn from Dr. Cecil's report, Plaintiff cannot
demonstrate a genuine issue of material fact with respect to the
alleged malpractice.  In his report, Dr. Cecil opines that Wenner
"should have been offered antiviral therapy . . . to try to
eradicate the HCV."  When given the inference that Dr. Cecil
intended this statement to mean that offering antiviral therapy
was the standard of care at the time, and that the Treating
Defendants departed from that standard by not providing such
therapy, it is clear that a dispute of fact exists.  Further,
this dispute of fact regarding whether antiviral therapy was the
standard of care and whether it was not followed is material, as
it could affect the outcome of the case.  However, the Court
finds that the issue is not genuine.

       As noted above, an issue is "genuine" if it is supported by
evidence such that a reasonable jury could return a verdict in

the nonmoving party's favor.  <u>Anderson</u>, 477 U.S. at 248.  Here,
the Treating Defendants came to the conclusion that Wenner was
not eligible for drug therapy given his decompensated liver
disease consistent with cirrhosis and portal hypertension.  So
too did Dr. DeLaTorre, who provided a second opinion for Wenner.
Further, Defendants' expert, Dr. Levy, came to the conclusion
that drug therapy was not the common practice in the community at
the time of Wenner's diagnosis.  In fact, as noted above, he
opined that "[e]ven today, most clinicians in practice would not
treat a patient with significant end stage disease, including
ascites, for fear of decompensating the patient and causing
premature death."  Moreover, Dr. Cecil failed to address the
implications of Wenner's decompensated liver disease for
potential drug therapy.  In light of these facts, the Court finds
that no reasonable jury could return a verdict in Plaintiff's
favor on this issue.  Thus, Plaintiff has failed to present any
*genuine* issues of material fact.  Defendants' Motion for Summary
Judgment is therefore granted with respect to Count III, which
must be dismissed in its entirety.

>    **D.   Negligence Claim**

Plaintiff alleges in Count II of the Amended Complaint that
the CMS Defendants negligently breached their duty to formulate
and implement policies to assure Wenner's health and welfare,
employ competent healthcare providers, and properly supervise

their healthcare providers.  The Court notes that Defendants seem to have confused Count II's negligence claim against the CMS Defendants with Count III's medical malpractice claim against the Treating Defendants, and seeks to dismiss both on the same basis. Specifically, Defendants seek to dismiss Plaintiff's medical malpractice/negligence claims on the grounds that there was no physician-patient relationship between Wenner and any of the CMS Defendants at any time during his incarceration.  While such a consideration would be relevant to a claim for medical malpractice, the Court notes that no such claim has been brought against the CMS Defendants.  Only Treating Defendants are alleged to have committed medical malpractice.  Moreover, Defendants' arguments do nothing to undermine Plaintiff's negligence claim.

Nevertheless, as set forth above, the Court has already determined that there is no evidence to suggest that Wenner's diagnosis with HCV was improperly delayed or that the treatment Wenner received following his diagnosis was in any way inappropriate.  In light of this determination, Plaintiff cannot possibly state a viable claim for negligence.  See Elizabethtown Water Co. v. Hartford Cas. Ins. Co., 998 F. Supp. 447, 455 (D.N.J. 1998) ("For negligence to constitute a cause of action, a plaintiff must prove three elements: a duty or obligation, a breach of that duty, and causation to the damages, i.e., the breach caused the plaintiff's injured.") (citing Prosser & Keeton

on the Law of Torts 164-65 (5th ed. 1984)).

Even assuming *arguendo* that the CMS Defendants had a duty to formulate and implement policies regarding the diagnosis and treatment of HCV, employ competent healthcare providers, and properly supervise their healthcare providers, and that the CMS Defendants breached those duties, Plaintiff will be unable to demonstrate that Wenner suffered damages as a result of that breach of duty.  Regardless of any policy the CMS Defendants may have had to prevent treatment of HCV, there is no evidence capable of creating a genuine issue of material fact with respect to whether Wenner was denied any treatment to which he was entitled.  Accordingly, for the reasons expressed above, the Court finds that Plaintiff has failed to present any evidence capable of creating a genuine issue of material fact with respect to causation.  Defendants' Motion for Summary Judgment will therefore be granted with respect to Count II, which must be dismissed in its entirety.

### E.    Wrongful Death and Survival Claims

In Counts IV and V of the Amended Complaint, Plaintiff alleges violations of the New Jersey Wrongful Death Act, N.J.S.A. 2A:31-1, and the New Jersey Survivors Act, N.J.S.A. 2A:15-3, respectively.  The New Jersey Wrongful Death Act allows an *administrator ad prosequendum* to recover pecuniary damages "[w]hen the death of a person is caused by a wrongful act,

19

neglect or default."  N.J.S.A. 2A:31-1.  "[New Jersey's] Wrongful Death Act is remedial in nature and is designed 'to compensate surviving dependents for the pecuniary losses resulting from death' of, in many cases, the 'breadwinner.'"  LaFage v. Jani, 766 A.2d 1066, 1075 (N.J. 2001) (quoting Kibble v. Weeks Dredging & Const. Co., 735 A.2d 1142, 1148-49 (N.J. 1999)).  Therefore, an *administrator ad prosequendum* may only recover pecuniary damages, such as the loss of future financial contributions, advice, guidance and counsel.  See Johnson v. Dobrosky, 902 A.2d 238, 247 (N.J. 2006).  Here, Plaintiff has failed to provide any evidence that he suffered any pecuniary damages as a result of Wenner's death, or even to argue that such damages exist.  Accordingly, Plaintiff's wrongful death claim must be dismissed.

The New Jersey Survivors Act allows an executor or administrator to bring suit on behalf of the deceased and recover damages as the deceased would have if he were living.  See N.J.S.A. 2A:15-3.  The Survivors Act, thus, simply preserves to the deceased's estate any personal cause of action that the deceased would have had if he had survived.  See Smith v. Whitaker, 734 A.2d 243 (N.J. 1999).  Here, as set forth above, the causes of action brought by Plaintiff on behalf of Wenner's Estate have been dismissed.  Accordingly, Plaintiff count for violation of the New Jersey Survivors Act must likewise be dismissed.

IV.   **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted.  An Order consistent with this Opinion will be entered.


Dated: April 21, 2009          s/ Noel L. Hillman
                               HON. NOEL L. HILLMAN, U.S.D.J.


At Camden, New Jersey